Raskin v Raskin (2004 NY Slip Op 50788(U))

[*1]

Raskin v Raskin

2004 NY Slip Op 50788(U)

Decided on July 12, 2004

Supreme Court, Kings County

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on July 12, 2004

Supreme Court, Kings County
SIMON RASKIN, Plaintiff,
against
IRINA RASKIN, Defendant.
22350-03

Betsy Barros, J.
Defendant-wife brings this Order to Show Cause seeking an order vacating the Judgment of Divorce dated February 5, 2004, which was granted upon her default of appearance in the action, and awarding her attorney's fees.
Plaintiff-husband files in opposition.
Statement of facts
The parties were married in Russia on July 10, 1992.[FN1] Two children, Yakov Raskin, 16 years old, and Leo Raskin, 6 years old, were born of the marriage. The wife is 38 years old and employed as a customer service assistant. She claims income of approximately $25,000 per annum. The husband is 41 years old; he is self-employed as a doctor of podiatry, and by a medical facility. He claims an annual gross income of approximately $122,000.
On June 18, 2003, plaintiff-husband commenced an action for divorce by summons dated June 13, 2002, in conformity with DRL §232.[FN2] Prior to that date, on or about April 4, 2003, defendant-wife, pro se, filed a petition in the Family Court requesting a temporary order of protection against plaintiff-husband. Thereafter, on or about June 11, 2003, she filed a summons requesting child support which was made returnable to August 11, 2003.
During the August 11, 2003 hearing, where plaintiff appeared with counsel and defendant
pro se, defendant indicated to the Hearing Examiner, Isrealia Meyeri, that she was seeking not only child support but spousal maintenance. The hearing examiner, after noting that defendant [*2]was required to submit a financial affidavit listing her personal income and expenses, stated

You'll bring me proof of what [your personal expenses] are...and I'll have a hearing on the spousal support. The child support is easier to do. It's a straight percentage. The spousal support, I have to have a hearing.
(Transcript of Family Court Proceedings, August 11, 2003, page 16, lines 12-17, hereinafter "Tr. 8/11/03 at 16:12-17").
At this point counsel for plaintiff engaged in the following colloquy with the court:

PLAINTIFF'S COUNSEL [MR. ROBEDEE]: ...I'll point out, while the petitioner is here, and there is about three days remaining from the time she was served with the Summons and Complaint in the Supreme Court matter, and I haven't heard from an attorney or received any kind of response. That issue COURT: All right.
Well, you have to get a lawyer for this. The Supreme Court action, you need a lawyer for that.
COUNSEL:That issue may be resolved there.
MS. RASIN[A]:Yes, I understand that, but COURT:If you don't answer, you will lose by default. You have to put in an answer, okay.
MS. RASKIN[A]:I understand.
COURT: You get a lawyer for that....
(Tr. 8/11/03 at 16:22-25; 17:1-17). Without receiving any further explanation or elaboration about what issues would be decided in the Supreme Court action from either plaintiff's counsel or the hearing examiner, defendant was told to return to court on November 12, 2003.
On November 12, 2003, a hearing was held. Plaintiff-husband appeared with an attorney and defendant-wife was self-represented. 
The hearing did not follow the traditional question and answer format. Instead, the hearing examiner reviewed the parties' financial statements, asked specific questions about certain income and expense items, and periodically announced the figures that would be used to determine the parties' respective child support obligations. The examiner also directed questions interposed by the parties.
After inquiring of plaintiff whether he obtained his medical license during the course of the marriage a circumstance that he affirmatively acknowledged the examiner then issued the following statement:

COURT:[...] My power is limited. All I can do is make orders of support. I [*3]can't do anything about property. The law in New York says that the Supreme Court can do things about property when they resolve a marriage.
Under New York law, if somebody gets a license or a degree during the marriage, it is considered property. I can't do anything about it. If you take this petition or if you take this proceeding to the Supreme Court, they can deal with that issue. I am not ordering spousal support at this time because I am applying the guidelines for the entire amount of his income that I (inaudible) to him, and my finding is that's going to be sufficient for you and you are working full-time.
You could always bring this action to the Supreme Court, as can you, sir, on that issue COUNSEL (MR. ROBEDEE): Actually 
COURT: and you started one.

COUNSEL:Just for the record, because I made the same record in July before Judge O'Donoghue.
COURT:Okay.
COUNSELThere was an index number purchased for a divorce action between the parties on June the 18th. Ms. Raskina was personally served by a licensed process server for United Process on July the 24th. She decided not to answer that summons. There is actually a note of issue has been filed and the Clerk has accepted all the papers, and a judgment of divorce based on her default is about to be entered against her.
COURT:Okay, ma'am, I would suggest that when 
COUNSEL:She should be aware of that.
COURT:You should go to the Supreme Court because there is a proceeding going on and you never appeared, and they're going to do things without you, and make them aware of the orders I'm making today.
COUNSEL:Well, the temporary order in this proceeding was all disclosed by me in my
affirmation of regularity.
[*4]
COURT:Okay.
COUNSEL:So, they are fully aware of what is going on here.
COURT:Okay. Ma'am, it's a mistake to ignore Court papers. [...]
(Tr. 11/12/03 at 52:14-25; 53:1-25; 54:1-18). Significantly, defendant did not partake in this colloquy regarding the procedural posture of the Supreme Court action.
By decision entered November 18, 2003, the hearing examiner directed plaintiff-husband to pay $2193 per month in child support, as well as arrearages owed for period June 11, 2003 to November 12, 2003, totaling $1815.20, at a rate of $25 per month commencing November 30, 2003.
Defendant-wife submitted an objection to the hearing examiner's final order by written statement dated December 31, 2003, claiming that the examiner had overstated her income and erroneously directed her to procure health insurance although the children were already covered under her employer's insurance policy.[FN3]
On February 5, 2004, plaintiff-husband obtained a default judgment of divorce, which judgment was entered on February 9, 2004.
Parties' contentions
By Order to Show Cause filed February 27, 2004, defendant seeks to vacate that judgment on the grounds of excusable default and meritorious claim. Specifically, she claims that since her primary concern was obtaining financial support for her children, her first thought was to pursue her petition for support in Family Court and then deal with the divorce action in Supreme Court. She also alleges that plaintiff's claim of constructive abandonment by her since June 1, 2002 is false. She avers that she and plaintiff engaged in sexual intercourse after that time, resulting in a pregnancy that was terminated on November 1, 2002.
Plaintiff's attorney counters that defendant misrepresented her income in Family Court and falsely claims that plaintiff did not inform her that he was steadfastly pursuing his divorce action in the Supreme Court while the matter was being heard in the Family Court. He adds that the "custody, visitation and child support were fully litigated by the parties before the Family Court..... [T]here are no equitable considerations regarding the protection of the interests of children before the Court" (Affirmation in Opposition, ¶4).
In his affidavit in opposition, plaintiff essentially recites that he married the defendant to [*5]facilitate their son's entry into the United States from the former Soviet Union, and that she provided him little sustenance and support during their marriage, contributing virtually nothing during his quest to secure a medical education and license. He claims that the child she aborted was not his and that whatever emotional and other support he received during his marriage was provided by his now wife.
applicable law and discussion
I. Motion to Vacate Default Judgment
In considering a party's motion to vacate a judgment of divorce, a trial court must adopt the liberal policy supporting the disposition on the merits of the marital res and related issues (Viner v. Viner, 291 AD2d 398 [2d Dept 2002](citations omitted), provided that the party seeking vacatur establishes a reasonable excuse for the default and a meritorious claim (Payne v. Payne, 4 AD3d 512, 513 [2d Dept 2004]); the court must also consider the interests of innocent third parties (Goia v. Goia, 245 AD 373, 374 [4th Dept 1935].
Defendant in the instant matter has done both. Consequently, her motion to vacate the judgement of divorce entered upon her default of appearance is granted in its entirety.
While defendant acknowledges receipt of the summons commencing the action for divorce in the Supreme Court, and plaintiff points to mention of the pendency of the action during the Family Court proceedings, a closer look at the record discloses a mixed bag of confusing representations that would have waylaid the most erudite and experienced law practitioner. This court finds that defendant's delay in appearing in the Supreme Court action while pursuing child and spousal support in Family Court constitutes excusable default.
During her pro se appearance in Family Court on August 11, 2003, the defendant raised the issue of spousal support. The hearing examiner noted that she would "...have to have a hearing" (Tr. 8/11/03 at 16:16-17") on that question. Plaintiff's attorney immediately interjected that a summons and a complaint had been filed in the Supreme Court, and that defendant had not yet filed an answer (Tr. 8/11/03 at 16:22-25). Defendant was then directed to "get a lawyer" to file an answer or risk entry of a default judgment (Tr. 8/11/03 at 17:5-6; 12-14).
The problem with this sequence of events is that plaintiff had not filed a complaint, only a summons. The summons contained bold letters describing the proceeding as an "Action for Divorce" and included a three-line paragraph written in very small letters stating,

The relief sought is a judgment of divorce in favor of the Plaintiff dissolving the marriage between the parties in this action. The nature of any ancillary or additional relief demanded is equitable distribution, visitation with the parties infant children and child support to be ordered at the statutory guideline in favor.
(emphasis added). Defendant, a lay person unschooled in the myriad of jurisdictional issues and distinctions attendant Family and Supreme Court proceedings, and unfamiliar with such terms as "default judgment" and the difference between spousal support and equitable distribution understandably opted to continue her pursuit of child and spousal support in the Family Court where she could appear without an attorney. From what the hearing examiner said, she would have to retain an attorney to appear in Supreme Court and essentially litigate the very issues the hearing examiner and the summons indicated would be addressed in the Family Court [*6]proceeding. Had plaintiff filed a complaint setting forth detailed factual allegations and requests for relief, defendant may have better understood that the petition she filed in Family Court was limited to her pre-divorce issues.
Defendant's seeming confusion about the relief available to her in Family Court was made all the more evident when she appeared for the final hearing before the hearing examiner on November 12, 2003.
After getting the parties to disclose their income and expenses, the hearing examiner concluded that she would not award defendant spousal support and told her, "You could always bring this action to the Supreme Court, as can you, sir..." (Tr. 11/12/03 at 53:7-8).
A full comprehension of this determination would likely have caused defendant to appear in the Supreme Court action. Instead, she awaited submission of the hearing examiner's report and then filed objections. When she finally retained legal counsel, she learned that a default judgment had been entered.
Unlike the defaulting parties in Sommers v. Sommers, 305 Ad2d 662 [2d Dept 2003] and Baumer v. Baumer, 268 AD2d 495 [2d Dept 2000], who waited more than one and six years to vacate the judgment entered on their default of appearance, respectively, the defendant herein sought vacatur of the default judgment within 18 days after entry of the judgment. Her lack of legal representation, confusion about the respective powers of the Family and Supreme Court, and understandably mistaken belief that the Family Court would resolve all financial issues provide a sufficient predicate for a finding of excusable default. Moreover, her claimed defense to the underlying cause of action she sustained sexual relations with the plaintiff long after her claimed abandonment of the marital bed in June 2002 is facially meritorious. At this stage of the proceedings, plaintiff's assertion that defendant's aborted fetus was not his, is insufficient to rebut the strong presumption of paternity (Richard B. v. Sandra B. B., 209 Ad2d 139 [1st Dept] appeal dismissed 87 NY2d 861 [1995], rehearing denied 89 NY2d 982 [1997]).
The court has considered plaintiff's remarriage to another individual in deciding this motion. However, the equities militate against denial of defendant's motion, especially since plaintiff may have sought to have the Family Court and Supreme Court matters consolidated so that a more uniform and final adjudication of the issues could have followed. Such an approach may have clarified for defendant the jurisdictional distinctions between the two tribunals and avoided entry of the default judgment.
Finally, had this court not found that defendant established a reasonable excuse for her default and a meritorious claim, that portion of the judgment providing for child support and denying spousal support and equitable distribution, would have been vacated since it failed to "set forth the statutory factors considered in...awarding maintenance and distributing marital property" (Rosen v. Rosen, 308 AD2d 482 [2d Dept 2003]; Payne v. Payne, supra, 4 AD3d 513-514).
II. Interim Attorney Fees
Defendant has moved for interim counsel fees. A grant of such relief, which is committed to the sound discretion of the trial court (Pena v. Pena, 255 AD2d 498 [2d Dept. 1998]), is proper where the parties have greatly disparate financial circumstances (Wolf v. Wolf, 160 AD2d 555, 556 [2d Dept. 1990]). In such circumstances, the non-monied spouse is not required to exhaust all available financial resources (DeCabrera v. Cabrera-Rosete, 70 NY2d [*7]879, 881 [1987]).
Defendant is awarded interim counsel fees in the sum of seventy-five hundred ($7500) dollars, to be paid by the plaintiff directly to the defendant's attorney, within 30 days of the date of this decision. This award is made without prejudice to further applications for additional sums, as necessary at the time of trial or sooner (Jorgensen v Jorgensen, 86 AD2d 861 [2d Dept. 1982]). Should counsel fees not be paid by or within the 30-day period, the clerk of this county is directed to enter a money judgment in favor of Shmuel Agami, Esq., maintaining offices at 60 East 42nd Street, Suite 1254, New York, NY 10165, upon written affirmation. No further notice is required.
This monetary award is subject to reallocation at trial.
This constitutes the decision and order of the court.
Dated: July 12, 2004_______________________
BETSY BARROS, J.S.C.
Footnotes

Footnote 1:The parties were first married on December 1, 1987. After that union was ostensibly dissolved, they remarried on July 10, 1992.

Footnote 2:Contrary to defendant's contention, an action for divorce may be commenced by service of a summons only provided that the summons "shall have legibly written or printed upon the face thereof...'Action for Divorce'...and shall specify the nature of any ancillary relief demanded" (DRL §232[a]). A default judgment may not be rendered in favor of plaintiff unless the copy of the summons is personally delivered to the defendant or served pursuant to court order by any order method in accordance with CPLR §§308 or 315. The affidavit of service filed in the instant action, sworn to on October 9, 2003, avers that defendant-wife was personally served with the summons on July 24, 2003.

Footnote 3:By Decision and Order dated March 22, 2004, Judge Freeman, dismissed defendant's health insurance claim noting that petitioner-defendant had misread read the order since she had been directed to maintain medical insurance not obtain it; she remitted the matter to the hearing examiner so that petitioner-defendant's income could be recalculated.
On April 12, 2004, Hearing Examiner Mayari issued an additional Finding of Fact determining that defendant's support obligation of 25% did not substantially change as a result of the recalculation of her income, which reduced her income average for period June 11, 2003 to August 8, 2003.